# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, *et al.*,<br><br>Defendants. | Case No.: 1:17-cv-10014-LGS<br><br>**STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**<br><br>The Honorable Lorna G. Schofield |

IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiffs, City of Birmingham Retirement and Relief System, Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds, Teamsters Local 456 Pension and Annuity Funds and the International Brotherhood of Teamsters Local No. 710 Pension Plan ("Lead Plaintiffs") and Defendants Credit Suisse Group AG ("CS"), Brady Dougan, Tidjane Thiam and David Mathers ("Defendants"), each of whom individually is referred to herein as a "Party," and collectively, the "Parties," by and through their undersigned counsel, pursuant to the Federal Rules of Civil Procedure and Rule 502 of the Federal Rules of Evidence, that:

## I.      PURPOSE

This Stipulation and Order ("Order") regarding the production of Electronically Stored Information ("ESI") and Hard Copy Documents (collectively, "Document" or "Documents") shall govern discovery of Documents in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

## II.  LIMITATIONS AND NON-WAIVER

The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege arising under the laws of any jurisdiction or treaty, including the attorney-

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 1

client privilege, the bank examiner privilege, Swiss data privacy protections, and the work-product doctrine. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents and ESI are preserved and may be asserted at any time.

Nothing in this Order is intended to expand or limit the Parties' obligations under the Federal Rules of Civil Procedure and Local Rules. Any disputes arising out of the production of documents subject to this Order shall be resolved according to Federal Rules of Civil Procedure, this Court's Local and Individual Rules, and any other applicable orders, laws, and rules.

III.  PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI

A.  The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant information and ESI will be reasonable and proportionate. Relatedly, the Parties agree to meet and confer to identify the names of individuals and/or sources from which the producing party plans to collect documents in response to the document requests ahead of any document collections. Sources of potentially relevant information and ESI include, but are not limited to, active data (e.g., computers, servers and databases), portable data (e.g., laptops, mobile phones and external hard drives), non-traditional data (e.g., cloud-based data storage, social media and messaging apps), inactive data (e.g., legacy systems, archives and backups) and hard copy documents. The Parties agree to meet and confer as needed to resolve any disagreements regarding whether collection from particular sources referenced above is

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 2

reasonable and proportionate to the needs of this case and/or specific discovery requests. In instances in which a producing party becomes aware of the loss or destruction of relevant and non-duplicative information or ESI, the producing party agrees to identify: (1) the circumstances surrounding the destruction or loss of the information or ESI (2) where and when the information or ESI was last retrievable in its original format; and (3) whether such information or ESI is available from other sources.

B.      If a producing party is aware of inaccessible data that is likely to contain unique, discoverable ESI, it will identify the source from which it claims the data is not reasonably accessible to the receiving party.

IV.    COLLECTIONS, CULLING & REVIEW

As it concerns collections, culling and review, the Parties will meet and confer to discuss any methodologies to be employed such as the use of search terms, filters and date ranges or the use of advanced search and retrieval technologies like predictive coding or other technology-assisted review ("TAR"). This is an iterative process whereby the Parties agree to revisit, reevaluate and refine these processes as needed to ensure validity and completeness. Relatedly, the producing party, to the extent search terms are used, will provide search term reports for each custodian or data source that indicate the "hit" count of documents per search term. Nothing in this paragraph will require a producing party to reveal information that constitutes attorney work product.

V.    PRODUCTION FORMATS

The Parties agree to produce Documents in the formats set forth in Appendix 1 and 2 hereto or meet and confer regarding reasonable exceptions and limitations.

VI.    MODIFICATION

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 3

This Order may be modified by written agreement of the Parties or by the Court for good cause shown.

VII.    MISCELLANEOUS PROVISIONS

A.    Objections Preserved.

Nothing in this Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI.

B.    Technical Variances.

Recognizing that each producing party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No party shall unreasonably object to any such variance.

C.    Lost or Destroyed Documents.

If a producing party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the party's document retention policies, the producing party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 4

information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

     D.      <u>Privileged Documents and Privilege Log</u>.

     To the extent that a party reasonably determines that one or more responsive documents are not discoverable or a portion of a Document needs to be redacted because it is subject to the attorney-client privilege or attorney work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall provide a rolling log starting within 14 days of substantial completion of document production, that complies with Local Rule 26.2.  Additionally, no later than 30 days prior to substantial completion of document production, the Parties will meet and confer on a date certain by which all privilege logs will be provided .  To the extent a party chooses to produce a document-by-document log, with respect to email threads, the author/addresser, addressee(s) and recipients of only the top email in the chain will be set forth in the author/addressee, addressee(s) and recipient fields of the log and for redacted Documents, if there is more than one redaction, one log entry can be used to describe the multiple redactions. In-house attorney and outside counsel names shall be identified on any privilege log(s).

     Documents or portions thereof that are Privileged, that pertain to this litigation and that post-date the filing of the original complaint need not be placed on a privilege log.

     E.      <u>Hard Copy Document Storage</u>.

     During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy Documents as to which there may be issues of legibility of all or any part of the production copy. Each party reserves the right to request to inspect such

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 5

original documents of the opposing party or Parties, which request shall not be unreasonably denied. If such request to inspect is denied, the party may seek relief from the Court.

     F.     <u>Reproduction as Natives</u>.

The Parties agree that to the extent any party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing party shall respond reasonably and in good faith to any such request.

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 6

**APPENDIX 1: PRODUCTION DELIVERY REQUIREMENTS**

I.        GENERAL PRODUCTION PROVISIONS

A.        The Parties have agreed that ESI should be produced as TIFF images and in native format where applicable (as described below) with accompanying data and image load files.

B.        TIFF Image Files: The Parties agree that all Documents, with the exception of Documents produced in native format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

C.        Text Files: Each Document produced under this Order shall be accompanied by a document level text file containing all of the text for that document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents as applicable. The .DAT load file shall include a link to the corresponding text file.

D.        OCR Text Files: The Parties will provide searchable OCR text of any paper or imaged Documents, unless the party determines that the utility of the OCR is outweighed by the expense. In that case, the producing party will produce the Documents as they are kept in the ordinary course of business.

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 7

E.      <u>Extracted Text Files from ESI</u>: The Parties shall extract the text of each ESI item directly from the ESI native file, where extracted text is reasonably available. For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

F.      <u>OCR Text for Redacted Documents</u>: The Parties will provide searchable OCR text for the unredacted portion of any redacted files.

G.      <u>Bates Numbering</u>:

i.      Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters; and (4) be sequential within a given Document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

ii.     The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the receiving party believes that a Bates number obscures the content of a Document, then the receiving party may request that the Document be produced with the Bates number in a different position.

H.      <u>Re-Production of Prior or Other Litigation Documents</u>. Where a producing party makes a re-production of a set of documents produced in a prior litigation or any other proceeding, the producing party may, at its discretion (absent contrary Court order), re-produce such documents in the manner in which they were produced in the prior case, including all

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 8

objective coding or metadata fields required by this protocol to the extent reasonably available to the producing party as part of the productions set. For any such re-production in accordance with this paragraph, the producing party is not obligated to re-format the prior production in accordance with the production specifications in this stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

I.  <u>Parent-Child Relationships</u>: Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying the family relationship in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. Not all attachments may be produced – for example, privileged or nonresponsive attachments may be removed, but all documents within responsive families will be Bates numbered prior to production. To the extent attachments are not produced on the basis of responsiveness or privilege, the producing party will provide slipsheets stating "Non-Responsive Withheld" or "Privileged Withheld" for omitted documents, except that non-responsive images, such as logos in signature blocks, need not be marked by a slipsheet. However, non-privileged cover emails to responsive documents will be deemed responsive and produced. Privilege logs and metadata for any document withheld as Privileged shall be provided consistent with the specifications as described above at Section VI. D. Privileged Documents and Privilege Log except that Metadata that is subject to a privilege or protection may also be withheld. The Parties shall meet and

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 9

confer regarding appropriate metadata to be provided for attachments withheld as Non-Responsive.

       J.    <u>Color Documents</u>: If an original ESI Document contains color text, markings or graphics, and the receiving party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format. The producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in native format. This section also applies to Documents that are produced as TIFF images.

       K.    <u>Confidentiality Designations</u>: If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document. If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the Document. For each Document that is marked confidential, a confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any Documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

       II.    <u>PRODUCTION OF HARD COPY DOCUMENTS</u>

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 10

A.     <u>Scanned Documents</u>: All hard copy Documents that are scanned will be produced in electronic form. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color Documents will be provided in JPG file format.

B.     <u>Unitization of Paper Documents</u>: To the extent practicable, hard copy Documents shall be unitized using logical document determinations or "LDD."

C.     <u>Identification</u>: Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

D.     <u>Custodian Identification</u>: The Parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

E.     <u>Metadata</u>: The metadata associated with each hard copy Document shall identify the Bates number, the custodian associated with that hard copy Document, and any confidential designation or redaction applied to that Document. Where reasonably possible, for each hard copy document, the producing party should also provide the metadata fields as described below in Section III.D.

III.     <u>PRODUCTION OF ESI</u>

A.     <u>De-NISTING and System Files</u>: ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced. The Parties may mutually agree upon any additional file types that can be excluded from review and production. A producing party shall identify any additional standard, readable, and reviewable

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 11

file types which have been excluded from its document review population for any production made following the date of this Order, and will utilize reasonable best efforts to do the same with respect to any productions made prior to the date of this Order. If a party excludes from review a standard, readable, and reviewable file type not within the industry standard, that party must disclose such an exclusion to the other Parties.

B.      Native Files: Certain file types, such as presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), photographic images, and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced in native format, the producing party shall provide a single-page TIFF slipsheet (excluding native files for PowerPoint) with the applicable Bates stamp indicating that a native item was produced. The corresponding load file (.DAT) shall include a NativeFilelink which provides the relative path linking information for each native file that is produced.  In addition, the confidentiality designation will be indicated in the name of the native file.  With respect to word processing application files (e.g., MS Word), the receiving party may make reasonable requests for the production of files in native format.

C.      Metadata Fields and Processing:

i.      ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order. The producing party will provide information on the time zone in which the data was processed.

ii.      Hidden text: ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 12

changes, redlines and comments. Upon request, a producing party will produce files with any such information in native format.

      iii.   <u>Compressed Files and Encrypted Files</u>: Compressed file types (e.g., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The producing party will take reasonable steps, prior to production, to unencrypt any discoverable ESI that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

      iv.   <u>Microsoft "Auto" Feature and Macros</u>: Microsoft Excel (.xls), Microsoft Word (.doc), and Microsoft PowerPoint (.ppt) Documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the Document was used in the ordinary course of business, and if such features are found, they should be indicated in the Metadata in the field ShowFieldCodes. To the extent that any documents with the features described above in this subsection provide solely inaccurate metadata, the Parties agree to meet and confer to identify appropriate solutions. For example, if the only date-related information for a document is inaccurate, then manually coding the date, with a corresponding metadata field, e.g., Coded Date, offers a potential solution.

      v.   <u>Metadata and Coded Fields</u>: ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

      D.   This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate,

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 13

where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) redaction status, and (i) confidentiality designation. These fields should be populated for all produced ESI regardless of whether the fields can be populated pursuant to an automated process. To the extent providing these metadata fields is unduly burdensome, the Parties shall meet and confer to determine appropriate solutions.

IV.   DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

A.    The Parties will produce Documents collected from databases or other structured databases in a reasonably useable format. If the data cannot be produced in a reasonably useable format, the Parties will meet and confer to address the production format. Prior to or during any such meet and confer, the producing party will provide sufficient information to enable the receiving party to evaluate the best method and format of production. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

B.    Proprietary or Special Software. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

V.    RESPONSIVENESS, PRIVILEGE AND REDACTIONS

A.    Redactions: The Parties agree that where ESI items need to be redacted for Privilege, they shall be produced in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Any unaffected data fields shall be provided. The redaction of any material for Privilege shall be governed by the

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 14

applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in this action.  Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with appropriate portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video or very large spreadsheet), the producing party may produce a copy of the native file with the appropriate portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each Document that is redacted, a redaction field will be populated with the word "REDACTED" in the .DAT file. Also, the producing party will keep a pristine original copy of the native document.

 <u>Printing Specifications for Excel and PowerPoint files</u>: For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 15

Excel Print to TIFF Options

- Unhide columns and rows

- Unhide worksheets

- Autofit columns and rows, settings to be over by columns first and, then down by rows

- Wrap text

- Print gridlines

- Do not apply Autofilter

- Display headings

- Display comments

- Header and Footer filename field handling: Show field code

PowerPoint Print to TIFF Options

- Print notes pages

- Print hidden slides

- Print comments

The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. A Document's status as redacted does not relieve the producing party from providing all metadata required herein that is not the subject of a claim of privilege or similar immunity from discovery.

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 16

B.      De-duplication and Document Families. The producing party need only produce a single copy of a particular ESI item, and may de-duplicate, as agreed by the Parties, ESI vertically by custodian and horizontally across the population of records. The de-duplication method(s) employed should remain consistent across each production or otherwise be discussed and agreed to between the Parties concerning any changes. Duplicates shall be identified by using industry standard MD5 or SHA-1 hash values and only exact family duplicates will be removed (i.e., a duplicate document that is attached to a unique, different email would not be considered an exact duplicate). The hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. De-duplication shall not break apart families and shall be performed at a family level. A Document and all other Documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must be also produced, logged as Privileged, or slip-sheeted as non-responsive, and no such member shall be withheld from production as a duplicate. The producing party agrees that the presence of a custodian's name contained in "CustodianOther" field in the metadata for a particular Document is evidence that the custodian possessed that Document in his/her custodial file. No document that is the parent or an attachment of a produced Document may be withheld as a duplicate. The Parties agree to meet and confer as needed to resolve any disagreements regarding the de-duplication process, and will make reasonable efforts to provide information requested by the receiving party regarding that process.

C.      Load Files: The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding native file.

Concordance Data Load Files:

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 17

- The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);

- Quote - þ (ASCII 254);

- Newline - ® (ASCII174);

- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines;

- All date fields should be produced in mm/dd/yyyy format, if possible. Date fields may be combined date/time fields;

- All produced attachments should sequentially follow the parent Document/email.

Sample Concordance .DAT Load File:

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative Pathþ¶þExtracted Textþ

þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\001\ABC000001.txtþ

þABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\ABC000002.txtþ

The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 18

- Every image in the delivery volume should be cross-referenced in the image load file;

- The imageID key should be named the same as the Bates number of the page;

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

<u>Sample Concordance/Opticon Image (.OPT) Load File</u>:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

<u>OCR/Extracted Text Files</u>:

OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file: PROD001\TEXT\001\ABC00015.txt.

**APPENDIX 2: ESI METADATA AND CODING FIELDS**

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field Description |
| --- | --- |

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 19

| Field Name | Field Description |
| --- | --- |
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item <br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Coded Date | A manually coded date entry to correct for inaccuracies in date metadata fields, should a Party choose to undertake a manual correction, or if this information is requested by the receiving party for a certain document or set of documents, the producing party will make reasonable efforts to provide it. |
| Custodian | Name of person or source from whose/which files the item is produced |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de- duplicated, to the extend such information can be obtained by taking reasonable measures |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename, if feasible. Any container name (such as ZIP or PST containers) is included in the path. |
| FilePath-Dup | The file paths from the locations in which removed duplicate documents were stored, if feasible. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |

---

[1] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity or if it is not reasonably feasible to produce.

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 20

| Field Name | Field Description |
|---|---|
| NativeFileLink | Relative path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| SourceParty | Name of party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment, etc.) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 21

| Field Name | Field Description |
|---|---|
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/Email Subject | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| ShowFieldCodes | Will indicate where there are auto update fields, as described above in Paragraph III(C)(iv) |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" as applicable. Otherwise, blank. |

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: March 26, 2019                          Respectfully submitted,

**CAHILL GORDON & REINDEL LLP**          **SAXENA WHITE P.A.**

By: /s/ Herbert S. Washer                       By: /s/ Steven B. Singer
Herbert S. Washer                               Steven B. Singer (SS-5212)
David G. Januszewski                            Kyla Grant (KS-9961)
80 Pine Street                                  10 Bank Street, 8th Floor
New York, NY 10005                              White Plains, New York 10606

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 22

Telephone: (650) 493-9300
hwasher@cahill.com
djanuszewski@cahill.com

***Attorneys for Defendants***

Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
kgrant@saxenawhite.com

*-and-*

Maya Saxena
Joseph E. White, III (JW-9598)
Lester R. Hooker
150 East Palmetto Park Road
Suite 600
Boca Raton, FL 33432
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*-and-*

**COHEN MILSTEIN SELLERS
& TOLL PLLC**

Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

*-and-*

Daniel S. Sommers
Eric Berelovich
Adam H. Farra
1100 New York Ave NW, Suite 500
West
Washington, DC 20005
Telephone: (202) 408-4600

STIPULATION AND ORDER REGARDING THE PRODUCTION
OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-
10014-LGS

Page 23

Facsimile: (202) 408-4699

dsommers@cohenmilstein.com

afarra@cohenmilstein.com

eberelovich@cohenmilstein.com

***Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class***

IT IS SO ORDERED, this _____ day of _____, 2019.

_____

THE HONORABLE LORNA G. SCHOFIELD

UNITED STATES DISTRICT JUDGE

STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS CASE NO.: 1:17-CV-10014-LGS

Page 24