**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, et al., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 1:17-cv-10014-LGS ) |
| CREDIT SUISSE GROUP AG, et al., | ) **CLASS ACTION** ) |
| Defendants. | ) ) |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT**
**CLASS, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

I.     HISTORY OF THE LITIGATION AND THE SETTLEMENT ....................................... 3

II.    SUMMARY OF THE PROPOSED NOTICE PROCESS ................................. 6

III.   ARGUMENT ............................................................................................ 7

      A.    Preliminary Approval is Warranted and Will Allow Lead Plaintiffs to Notify the Settlement Class ..................................................... 7

      B.    The Proposed Settlement is the Result of Good Faith, Arm's-Length Negotiations ........................................................... 9

      C.    The Settlement is Within the Reasonable Range of Recovery ............................ 11

           1.    The Complexity, Expense, and Likely Duration of the Litigation ................ 12

           2.    Stage of Proceedings and Amount of Discovery Completed......................... 12

           3.    The Risks of Establishing Liability and Damages .......................................... 13

           4.    The Risks of Maintaining the Class Action Through Trial............................ 14

           5.    Reasonableness of the Settlement ................................................... 14

      D.    Certification of the Settlement Class for Settlement Purposes is Appropriate ........................................................................ 16

           1.    The Settlement Class Satisfies The Requirements Of Rule 23(a) ................ 17

           2.    Rule 23(b)(3) Is Satisfied .............................................................. 22

IV.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ...................... 23

V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS .............................................. 25

VI.   CONCLUSION..................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..................................................................................................... 17, 22

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
133 S. Ct. 1184 (2013).......................................................................................................... 23

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,*
504 F.3d 229 (2d Cir. 2007)................................................................................................. 18

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995).................................................................................................. 18

*Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)................................................................................................... 9

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001).............................................................................................. 9, 10

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43, 47 (2d Cir. 2000)............................................................................................. 9

*Hicks v. Morgan Stanley & Co.,*
No. 01-cv-10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003)................................. 20

*In re Am. Int'l Grp. Inc. Sec. Litig.*
689 F.3d 229, 240 (2d. Cir. 2012)....................................................................................... 17

*In re AMF Bowling Sec. Litig.,*
334 F. Supp. 2d 462 (S.D.N.Y. 2004).................................................................................... 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006)................................................................. 16

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.,*
No. 08-cv-8093-LTS, (J. Swain) (S.D.N.Y. May 27, 2015) (Dkt. No. 289) ........................... 21

*In re Beef Indus. Antitrust Litig.,*
607 F.2d 167 (5th Cir. 1979) ............................................................................................... 17

*In re Braskem Sec. Litig.,*
No. 15-cv-5132-PAE, (J. Engelmayer) (S.D.N.Y. Feb. 21, 2018) ............................................ 21

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.,*
No. 17 CIV. 1580 (LGS), 2020 WL 1329354, at *2 (S.D.N.Y. Mar. 23, 2020) ..................... 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ................................................................. 19, 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................... 9, 11

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................ 7

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................... 8, 9

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04-cv-8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................ 11, 19, 22

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................... 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................... 7, 8, 16

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
   No. 09-cv-1293, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) .................... 15

*In re Tower Group International, Ltd. Sec. Litig.*,
   1:13-cv-05852 (J. Torres) (S.D.N.Y. Nov. 23, 2013) (Docket No. 179) ................. 21

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................. 18

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............... 25

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................ 20

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972) ................................................................. 18

*Moore v. Paine Webber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ................................................................. 22

*Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*,
   No. 08 CV 321 (VB) (PED), 2012 WL 857891 (S.D.N.Y. Feb. 24, 2012) ............... 8

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................. 23

*Pub. Emps.' Ret. Sys. of Miss. V. Merrill Lynch & Co.*,
    277 F.R.D. 97, 106 (S.D.N.Y. 2011) ................................................................. passim

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ........................................................................... 17

*Schuler v. NIVS IntelliMedia Technology Group, Inc., et al.*,
    1:11-cv-02484-KMW (S.D.N.Y. Mar. 31, 2015) (Tr. At 11) ................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................. 7, 9, 11, 24

## <u>Rules</u>

Fed. R. Civ. P. 23 ................................................................................... passim

## <u>Other Authorities</u>

1995 U.S.C.C.A.N. 730 ............................................................................. 21

Fed. Judicial Ctr. 2004 ............................................................................. 8

H.R. Conf. Rep. No. 104-369 ...................................................................... 21

Manual for Complex Litigation, Third, § 30.42 (,
    Fed. Judicial Ctr. 1995 ........................................................................... 11

Newberg on Class Actions § 11.25 ............................................................... 8

Lead Plaintiffs City of Birmingham Retirement and Relief System, Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds, Teamsters Local 456 Pension and Annuity Funds, and the International Brotherhood of Teamsters Local No. 710 Pension Plan (collectively, "Lead Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion for:  (i) preliminary approval of the proposed Settlement between Lead Plaintiffs on behalf of themselves and the proposed Settlement Class, and defendants Credit Suisse Group AG ("Credit Suisse," or the "Company"), Brady W. Dougan, Tidjane Thiam, and David R. Mathers (the "Individual Defendants" and, collectively with Credit Suisse, "Defendants," and together with Lead Plaintiffs, the "Parties"); (ii) certification of the proposed Settlement Class for purposes of the Settlement[1]; (iii) approval of the form and manner of the settlement notices to members of the Settlement Class; and (iv) the scheduling of a hearing (the "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses.  The Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") is attached to the Stipulation and Agreement of Settlement filed separately as Exhibit A thereto.

## PRELIMINARY STATEMENT

Lead Plaintiffs and Defendants have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this action for $15,500,000.00 in cash.  This resolution, which represents a substantial recovery that falls well within the range of possible approval, involved, among other things: (i) a thorough pre-filing investigation of the claims in this matter, (ii) the filing of a detailed amended complaint, (iii)

---

[1] As detailed more fully below, the "Settlement Class" consists of all persons and entities who purchased, or otherwise acquired, the ADRs of Credit Suisse between March 20, 2015, and February 3, 2016, inclusive, and who were allegedly damaged thereby.

consultation with experts, (iv) successfully opposing Defendants' motion to dismiss in part and motion for reconsideration, (v) extensive discovery, including the review and analysis of over 1.5 million pages of documents produced by Defendants, (vi) the submission of detailed mediation statements setting forth the Parties' respective positions on the hotly disputed issues in the case, and (vii) two formal day-long mediations involving rigorous and extensive negotiations. The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), filed simultaneously herewith.[2]

Lead Plaintiffs and Lead Counsel approve of the Settlement. Lead Plaintiffs are institutional investors who oversaw the litigation and authorized the Settlement. Lead Counsel have substantial securities litigation experience and are recognized as leading experts in the field. Based upon their experience, their evaluation of the facts and the applicable law, their recognition of the substantial amount of the Settlement, and their analysis of the risk and expense of protracted litigation against Defendants, Lead Counsel and Lead Plaintiffs submit that the proposed Settlement is fair, reasonable, and adequate, and is in the best interests of the Settlement Class. This is especially so in light of the risk that the Settlement Class might recover substantially less (or nothing) if the Action were litigated through dispositive motions, trial, and the post-trial motions and appeals that would likely follow (a process that could last several years). Indeed, Lead Plaintiffs face significant risks with regard to establishing liability, particularly on the issues of loss causation and falsity, which Defendants vigorously dispute, among other issues.

Given these and other risks inherent in this complex securities class action, and the Settlement's substantial value, the Settlement represents an excellent result for the Settlement

---

[2] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation.

Class.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Settlement Class should be notified of the proposed Settlement.  In light of the substantial recovery obtained, and the risks and expenses posed by protracted litigation against Defendants, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order, which will, among other things:

(i)      preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)     certify the proposed Settlement Class for purposes of the Settlement;

(iii)    approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

(iv)     find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(v)      set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## I.      HISTORY OF THE LITIGATION AND THE SETTLEMENT

On December 22, 2017, this Action was commenced in this Court, styled *City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Credit Suisse Group AG, et al.*, Case No. 1:17-cv-10014.

By Order dated March 19, 2018, the Court appointed City of Birmingham Retirement and Relief System, Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds, Teamsters Local 456 Pension and Annuity Funds, and the International Brotherhood of Teamsters Local No. 710 Pension Plan as Lead Plaintiffs and approved Lead Plaintiffs' selection of Saxena White P.A. ("Saxena White") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Co-Lead Counsel for the proposed class.

Following an extensive investigation, and after consultation with experts, Lead Plaintiffs filed their Amended Class Action Complaint (the "Complaint") on April 18, 2018, on behalf of the Settlement Class, asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The Complaint alleged, among other things, that throughout the Settlement Class Period, Defendants: (1) made false and misleading statements or omissions in Credit Suisse's 2014 Annual Report related to Credit Suisse's risk limits and risk controls; and (2) made false and misleading statements or omissions about the extent of Credit Suisse's positions in its distressed portfolio in an October 21, 2015 press release and earning call. The Complaint further alleged that Credit Suisse's stock price was artificially inflated as a result of Defendants' false and misleading statements, and that Credit Suisse's stock price declined when the truth regarding Defendants' alleged misrepresentations was revealed.

4

By Order dated February 19, 2019 the Court denied in part and granted in part Defendants' motion to dismiss for failure to state a claim. The Court permitted the allegations that Defendants made false and misleading statements or omissions in Credit Suisse's 2014 Annual Report related to Credit Suisse's risk limits and risk controls to proceed. Defendants moved for reconsideration of that decision; the Court denied that motion on May 16, 2019.

On April 25, 2019, Lead Counsel, Defendants' counsel, and a client representative participated in an initial in-person mediation session with nationally recognized mediator Michelle Yoshida of Phillips ADR Enterprises[3] in New York.  In advance of the mediation, the Parties prepared and exchanged detailed mediation statements addressing the facts and law of the case, including, among other things, Defendants' defenses on the issues of loss causation and falsity. This mediation session did not result in a resolution.

Over the next year the Parties engaged in extensive negotiations and litigation regarding discovery; the service of and response to requests for production, interrogatories, and requests for admission; and extensive document review. On May 13, 2020, Lead Plaintiffs filed their pre-motion conference letter in support of class certification. On May 20, 2020 Defendants filed their opposing letter.

On June 3, 2020, Lead Counsel, Defendants' counsel, and a client representative participated in a second day-long mediation session, conducted via Zoom due to the COVID-19 pandemic's restrictions on travel and group gatherings. After a full day of extensive, hard-fought, arm's length negotiations before Ms. Yoshida, the Parties reached an agreement in principle to settle the Action for $15,500,000.00 in cash for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of certain related papers.

---

[3] *See* http://www.phillipsadr.com/bios/michelle-yoshida/.

On June 17, 2020, Lead Plaintiffs and Defendants informed the Court that they had reached an agreement in principle to settle the case, and that they expected to submit preliminary approval papers to the Court by no later than July 10, 2020.

## II.   SUMMARY OF THE PROPOSED NOTICE PROCESS

The Notice explains that the Net Settlement Fund will be distributed to eligible members of the Settlement Class who submit valid and timely Claim Forms pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval.[4]

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the proposed Preliminary Approval Order) to members of the Settlement Class who can be identified with reasonable effort.[5]   Specifically, the Claims Administrator will utilize multiple sources of data to reasonably identify potential members of the Settlement Class, including: (i) lists provided by Credit Suisse (as required by paragraph 22 of the Stipulation) identifying potential Settlement Class Members; and (ii) a proprietary list maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities.

---

[4] As explained in the Notice (Exhibit A-1 to the proposed Preliminary Approval Order), Lead Counsel will apply to the Court for an award of attorneys' fees and litigation expenses, plus interest accrued thereon.  In accordance with the Private Securities Litigation Reform Act of 1995, Lead Counsel may also apply for reimbursement of the costs and expenses of Lead Plaintiffs (including lost wages) directly related to their representation of the Settlement Class.  Pursuant to the terms of the Stipulation, any award related to Lead Plaintiffs' involvement in this litigation will be paid from the Settlement Amount.

[5] Lead Plaintiffs request that the Court approve retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator") as the claims administrator for this case.  Epiq was selected by Lead Plaintiffs following a competitive bidding process and has administered numerous complex securities class action settlements.  Assuming that the Court approves retention of Epiq, Epiq will set up a website for the Settlement at www.CreditSuisseSecuritiesLitigation.com, which will include claims forms and other information about this Action and the Settlement.

Additionally, Lead Counsel will cause the Summary Notice (Exhibit A-3 to the proposed Preliminary Approval Order) to be published in *Investor's Business Daily* and over the *PR Newswire*.

The Notice advises members of the Settlement Class of the terms of the Settlement, Lead Counsel's forthcoming application for an award of attorneys' fees and reimbursement of expenses, and the proposed Plan of Allocation for distributing the Net Settlement Fund. The Notice further details: (i) the procedures for objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses; (ii) how members of the Settlement Class can exclude themselves from (opt out of) the Settlement Class; and (iii) the date, time, and location of the Settlement Hearing.

## III.    ARGUMENT

### A.    Preliminary Approval is Warranted and Will Allow Lead Plaintiffs to Notify the Settlement Class

In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). *See also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("[W]e emphasize that there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.") (citations omitted).

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. In the first stage, a court preliminarily approves the settlement pending a fairness hearing, certifies the class for

settlement purposes, and authorizes notice to be given to the class.  Manual for Complex Litigation, Fourth, § 21.632, at 320 (Fed. Judicial Ctr. 2004).  Once the class has received notice and has had an opportunity to object or opt out of the proposed class, the court then holds a final settlement hearing.  *Id.* § 21.633, at 321-22; *see also* 4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25 38-39 (4th ed. 2002) (endorsing two-step process).

At the preliminary approval stage, the Court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Prudential*, 163 F.R.D. at 209 (internal quotation marks and citation omitted). "Preliminary approval of a class action settlement . . . is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08 CV 321 (VB) (PED), 2012 WL 857891, at *4 (S.D.N.Y. Feb. 24, 2012) (internal quotation marks and citation omitted).  In making this preliminary determination, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *accord Nieves*, 2012 WL 857891, at *4.

Thus, at this stage, the Court need not answer the ultimate question of whether the Settlement is fair, reasonable and adequate.  When the Court makes that ultimate determination at a later stage, it will be asked to review the following "*Grinnell* factors":  "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the

stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 464 (S.D.N.Y. 2004).  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citation omitted).

Here, Lead Plaintiffs are requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement.  As stated above, the proposed Settlement provides a Settlement Amount of $15.5 million in cash, a substantial recovery that is unquestionably beneficial to the Settlement Class, and plainly "within the range of possible approval." *Initial Pub. Offering,* 243 F.R.D. at 87 (citations omitted).

**B.     The Proposed Settlement is the Result of Good Faith, Arm's-Length Negotiations**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel.  *Wal-Mart*, 396 F.3d at 116 (stating that where "the parties have bargained at arms-length, there is a presumption in favor of the [class] settlement").  As described above, the Settlement here was reached only after extensive, arm's-length negotiations before Ms. Yoshida in two separate mediation sessions.  It was only after the Parties

conducted a significant amount of discovery that the Parties mediated a second time with Ms. Yoshida on June 3, 2020, which resulted in the Settlement.  *See, e.g.*, *D'Amato*, 236 F.3d at 85 (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  As part of those negotiations, Lead Counsel and Defendants' counsel prepared and presented detailed submissions concerning, among other things, their respective views regarding the merits of the litigation, Defendants' defenses, and significant issues pertaining to loss causation and damages.  After intense back-and-forth negotiations, the Parties reached an agreement in principle to settle the Action.

The Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle.  Lead Plaintiffs conducted an extensive investigation prior to drafting and filing the consolidated amended complaint, which included, among other things, a thorough review of (i) Credit Suisse's public filings with the SEC; (ii) presentations, press releases, media and analyst reports made by or about the Company; (iii) transcripts of Credit Suisse's conference calls with analysts and investors; (iv) publicly available data relating to Credit Suisse securities; (v) interviews with former employees of the Company; (vi) consultations with relevant experts; (viii) review of other materials and data concerning the Company; and (ix) research of the applicable law with respect to the claims asserted in the Action, and the potential defenses thereto.

The Parties also engaged in extensive discovery. After numerous meet-and-confer sessions and pre-motion discovery correspondence to resolve numerous disputes over the scope of discovery, Defendants ultimately produced over 222,000 documents totaling over 1.5 million pages, as well as two installments of a lengthy privilege log. Lead Plaintiffs produced over 1,100 documents totaling over 30,000 pages.  In addition, Plaintiffs served requests for admission, which

Defendants responded to, and Defendants served interrogatories and requests for admissions. In addition, Lead Counsel consulted with an expert consultant on the issues of materiality, loss causation and damages. At the time that the Parties held their second mediation session in June 2020, Lead Plaintiffs had requested depositions of ten current and former employees of Credit Suisse, some of whom resided in the United States and others in Europe, and Defendants had requested depositions of Lead Plaintiffs.

Lead Plaintiffs also reviewed Defendants' mediation submissions setting forth their arguments on liability, loss causation, and damages and participated in two day-long formal mediation sessions involving extensive negotiations. Lead Plaintiffs and Lead Counsel therefore had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses thereto when they agreed to the Settlement.

Under these circumstances, a presumption of fairness attaches to the proposed Settlement. *See Wal-Mart,* 396 F.3d at 116 (stating that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting Manual for Complex Litigation, Third, § 30.42 (Fed. Judicial Ctr. 1995)); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144 (CM), 2009 WL 5178546, at *4 (S.D.N.Y. Dec. 23, 2009) (same). Moreover, the Settlement was negotiated at the direction of the Lead Plaintiffs, who are sophisticated institutional investors. This fact further strengthens the presumption of fairness. *See Glob. Crossing*, 225 F.R.D. at 462 (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

### C.    The Settlement is Within the Reasonable Range of Recovery

For preliminary approval purposes, the Court need not decide the *Grinnell* factors. Rather, if the Court finds that the Settlement is "within the range of possible approval" that might be

approved under *Grinnell*, it should grant preliminary approval.  *See* Manual for Complex Litigation, Third, § 40.42 (Fed. Judicial Ctr. 1995).  Here, the Settlement substantially satisfies the test announced by *Grinnell*, and the Court should grant preliminary approval.

## 1.     The Complexity, Expense, and Likely Duration of the Litigation

The Settlement provides the Class with substantial relief, without the delay and expense of trial and post-trial proceedings. Here, the Parties still faced both further fact and expert discovery, including depositions as well as completing review of voluminous document productions. Lead Plaintiffs had filed a pre-motion letter on class certification, which Defendants opposed; had the case not settled, Lead Plaintiffs and Defendants would have proceeded to brief class certification, supported by competing class certification experts. Lead Plaintiffs were also preparing for fact depositions, including of numerous fact witnesses residing in Switzerland and elsewhere in Europe.  Lead Plaintiffs may have been forced to seek permission from Swiss authorities or to have utilized the Hague Convention in connection with these witnesses, processes which are expensive, arduous, and which may have ultimately limited the scope of the discovery.

If the Parties did not agree to settle, they would have faced an expensive trial with an uncertain outcome. The jury would have had to determine numerous complex securities law issues, the intricacies of risk limits for complex products at a global bank, and navigate battles of the experts regarding market efficiency, loss causation, and damages. Additionally, the suspension of jury trials in the Southern District of New York due to the COVID-19 pandemic and the resulting backlog in court calendars likely would have extended the time before a jury trial, delaying a potential recovery for class members.

## 2.     Stage of Proceedings and Amount of Discovery Completed

As noted above, the motion to dismiss and motion for reconsideration were resolved. In the year preceding the mediation, the Parties exchanged and negotiated requests for production, requests for admission, and interrogatories, and Lead Plaintiffs were engaged in the review of over 1.5 million pages of documents produced by Defendants. The Parties had filed pre-motion conference letters on class certification. However, depositions, expert discovery, class certification briefing, summary judgment, and trial remained. These stages of the litigation would have been time consuming and expensive, particularly given the international nature of the litigation.

### 3.   The Risks of Establishing Liability and Damages

Although Lead Plaintiffs and Lead Counsel believe their case against Defendants is strong, they acknowledge that Defendants have put forth substantial arguments concerning liability and damages.  For example, Defendants fundamentally disagreed with Lead Plaintiffs' argument that the challenged statements were false or misleading, arguing, among other things, that (i) Credit Suisse's public filings accurately described Credit Suisse's risk management framework, including that Credit Suisse's risk appetite and risk limits may change; and (ii) that Credit Suisse did not repeatedly raise, breach, or otherwise violate its applicable risk limits. . Lead Plaintiffs had strong responses to those arguments, but there is no question these issues would persist throughout the Action and created a real risk that Lead Plaintiffs could ultimately recover materially less than the Settlement Amount – or nothing at all. Defendants also argued that Lead Plaintiffs could not establish scienter because Defendants made no statements about Credit Suisse's risk limits and controls which the Individual Defendants believed to be false at the time they were made. Again, this issue presented challenges for Lead Plaintiffs.

With respect to damages, Defendants argued that there was no "corrective disclosure" regarding Credit Suisse's risk limits and controls and that any ADR price decline was attributable

to myriad other factors unrelated to this lawsuit. The litigation therefore included substantial risks that Lead Plaintiffs would not ultimately recover the total recoverable damages, even if Lead Plaintiffs prevailed on liability.

If any of these arguments were to be accepted in whole or in part at summary judgment or trial, it could eliminate or dramatically reduce any potential recovery against Defendants.  Further, Lead Plaintiffs would have to prevail against Defendants at several stages – at the class certification stage, at summary judgment, and at trial, and even if Lead Plaintiffs prevailed at each of those stages, they would also have to prevail on the appeals that would likely follow.

### 4.       The Risks of Maintaining the Class Action Through Trial

Defendants would have vigorously contested Lead Plaintiffs' motion for class certification, but Lead Plaintiffs are highly confident that class certification is appropriate for this case and that their anticipated motion for class certification would have prevailed. Lead Plaintiffs thus did not view this as a substantial risk factor during settlement.

### 5.       Reasonableness of the Settlement

Defendants have agreed to settle this action for $15.5 million in cash.  This substantial recovery is an excellent benefit to the Settlement Class, especially in light of the significant risks posed by protracted litigation against Defendants.

In this case, there is a range of potential recovery if the case were litigated to a conclusion rather than settled.   Lead Plaintiffs' consultation with their expert indicated that the most aggressive damages calculation for the Class was approximately $65 million.   Defendants proffered numerous arguments as to why the damages were far less than the maximum damages.  This included claiming that no corrective disclosure was made on October 21, 2015; according to Plaintiffs' expert, if that theory were accepted, it would reduce damages to $54

million. Additionally, the $65 million estimate assumed that the entirety of the ADR price declines at issue in this case were attributable to Credit Suisse's statements regarding its risk limits and controls.  However, a host of other information was also announced on October 21, 2015 and February 4, 2016.  For example, with respect to the February 4, 2016 stock drop, which accounted for the vast majority of plaintiffs' alleged damages, the earnings announcement on that date disclosed not only the mark-to-market losses in the investment bank (a focus of this case), but significant other information not related to plaintiffs' allegations, including a goodwill impairment charge of CHF 3.8 billion, litigation charges of CHF 820 million, and the overall challenging market conditions for investment banks globally during this time.  As such, Lead Plaintiffs' recognized that Defendants had strong arguments that not all of the decline was related to the disclosure of the alleged fraud. In this regard, Lead Plaintiffs' expert advised that if only 45% of the February 4, 2016 price decline was related to plaintiffs' claim, then damages would be roughly $24 million (assuming that October 21, 2015 was not found to be a corrective disclosure). Accordingly, the settlement here represents a recovery in the range of 23.7% to 63.4% of plaintiffs' damages — an outstanding result by any measure.

In comparison, the median recovery in securities class actions in 2019 was approximately 2.1% of estimated damages.  *See* Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review" (NERA Jan. 21, 2020) at p. 20, Fig. 13; *see also In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 09-cv-1293, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (noting that a settlement obtaining 3.5% of the "most aggressive estimate of maximum provable damages … exceeds the average recovery in shareholder litigation" and affirming an average range of 3% to 7% recoveries) (citing *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011).

15

Given the complexities of the Action and the continued risks if the Parties were to proceed to trial, the Settlement represents a more than reasonable resolution of this Action and eliminates the risk that the Settlement Class might not otherwise recover from Defendants.  The proposed Settlement will allow the Class to receive a concrete benefit now, not a hypothetical benefit after years of uncertain litigation and a far-from-guaranteed jury verdict.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at \*13 (S.D.N.Y. Apr. 6, 2006) (recognizing that an immediate, substantial and concrete benefit of settlement outweighs possibility of higher recovery at trial).

### D.      Certification of the Settlement Class for Settlement Purposes is Appropriate

Lead Plaintiffs request that the Court certify the proposed Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  Pursuant to paragraphs 1(oo) and 2 of the Stipulation, the Parties have stipulated to class certification of the following proposed Settlement Class:

> All persons and entities who purchased, or otherwise acquired, the ADRs of Credit Suisse between March 20, 2015, and February 3, 2016, inclusive, and who were allegedly damaged thereby.

Under the Stipulation, Defendants, their related parties, and anyone who excludes himself, herself, or itself by filing a valid request for exclusion, are excluded from the Settlement Class. The Parties further stipulate to certification of Lead Plaintiffs as Class Representatives for the Settlement Class, and appointment of Lead Counsel Saxena White and Cohen Milstein as class counsel for the Settlement Class.

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *Prudential*, 163 F.R.D. at 205.  "'[S]ettlement classes are favored when there is little

or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge.'" *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d. Cir. 2012); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested"). The proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), there is no likelihood of abuse of the class action device, and the Settlement remains subject to the Court's approval at the Settlement Hearing.

### 1.     The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  All of these requirements are satisfied here.  Indeed, "Courts have consistently held that claims alleging violations of Section 10(b) and 20(a) of the Exchange Act are especially amenable to class certification." *See In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, No. 17 CIV. 1580 (LGS), 2020 WL 1329354, at *2 (S.D.N.Y. Mar. 23, 2020).

#### (a)     Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action

appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).  The Second Circuit and courts within it have repeatedly held that numerosity is presumed when the proposed class would have at least 40 members.  *See In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *10; *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995);  *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity.").

During the Class Period, the public float (i.e. the number of shares available to the public) of Credit Suisse ADRs exceeded 43 million,[6] and these shares traded on the New York Stock Exchange.  While the exact number of members of the Settlement Class is unknown to Lead Plaintiffs, Lead Plaintiffs estimate that there are thousands of investors, and that those investors reside in a geographically disbursed area.  Accordingly, the members of the Settlement Class are so numerous that their joinder would be impracticable.

### (b)    **Commonality**

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class.  *See Cent. States*, 504 F.3d at 245.  Securities cases easily meet the commonality requirement, because commonality is "plainly satisfied [where] the alleged misrepresentations . . . relate to all the investors, [because] the existence and materiality of such misrepresentations obviously present important common issues." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972).

---

[6] As admitted in Defendants' Responses and Objections to Lead Plaintiffs' First Set of Requests for Admission to all Defendants, Response to Request No. 16.

Here, the record reflects the existence of common questions.  Examples of the questions of law and fact common to all members of the Settlement include:

(1)     Whether Defendants violated the federal securities laws;

(2)     Whether Defendants misrepresented or omitted material facts concerning Credit Suisse's business, including its risk controls and risk limits;

(3)     Whether Defendants acted with scienter;

(4)     Whether the Individual Defendants controlled Credit Suisse and its violations of the securities laws;

(5)     Whether Defendants' alleged misrepresentations and omissions caused Settlement Class members to suffer a compensable loss;

(6)     Whether the prices of Credit Suisse's securities were artificially inflated; and

(7)     The extent of damages sustained by members of the Settlement Class, and the appropriate measure of those damages.

These common questions are sufficient to establish Rule 23(a)(2) "commonality."  *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011) (finding "commonality" established, explaining that, "[t]he common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers").

### (c)     <u>Typicality</u>

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted).  "'Typical' does not mean 'identical.'"  *Marsh & McLennan*, 2009 WL 5178546, at *10.

As with commonality, typicality is plainly satisfied here.  Like the other members of the Settlement Class, Lead Plaintiffs allege that they purchased Credit Suisse securities at artificially inflated prices due to Defendants' material misstatements and omissions regarding the Company's risk limits and risk controls, and were damaged when the truth emerged.  Thus, the claims of Lead Plaintiffs and of the Settlement Class members rely on the same facts and legal theories to establish liability.  Accordingly, the typicality requirement is met.  *See, e.g., Merrill Lynch*, 277 F.R.D. at 107.

### (d)     Adequate Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Flag Telecom*, 574 F.3d at 35.

Here, Lead Plaintiffs' interests do not conflict with those of the Settlement Class.  Rather, given that the Settlement Class was injured by the same materially false and misleading statements as Lead Plaintiffs, Lead Plaintiffs' interests are directly aligned with the interests of the Settlement Class.  *See, e.g., Merrill Lynch*, 277 F.R.D. at 110 (citing *Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071 (HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003)); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003).

Lead Plaintiffs have otherwise already demonstrated their commitment to prosecuting this Action on behalf of the Settlement Classes.  Lead Plaintiffs, who are institutional investors, received and reviewed periodic updates and other documents concerning the litigation, reviewed pleadings, and consulted with their counsel regarding significant developments.  Indeed, Lead Plaintiffs are the very type of institutional investors that Congress sought to lead securities

litigation when it passed the PSLRA.  Congress enacted the PSLRA in large part to encourage institutional investors like Lead Plaintiffs to take control of securities class actions by "participat[ing] in the litigation and exercis[ing] control over the selection and actions of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731.

Lead Plaintiffs have also retained counsel who are qualified, experienced, and able to adequately conduct the litigation.  Lead Counsel have demonstrated that they are qualified and capable of prosecuting this Action, having prosecuted many securities class actions (including within this Circuit and before this Court) for many years with a proven track record of success.[7] *See* Firm Resume of Saxena White (attached to this Memorandum as Exhibit 1) and Firm Resume of Cohen Milstein  (attached to this Memorandum as Exhibit 2).  Further, as set forth above, prior to reaching the Settlement, Lead Counsel undertook an extensive investigation, drafted a detailed amended complaint, consulted with experts, conducted discovery, and engaged in two formal, day-long mediation sessions.  By the time of the Settlement, Lead Counsel was well apprised of the strengths and weaknesses of Lead Plaintiffs' claims and was able to use this knowledge to engage in a rigorous negotiation process with Defendants.  Thus, the adequacy requirement is also met.

Accordingly, the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this Action.

---

[7] *See In re Tower Group International, Ltd. Sec. Litig.*, 1:13-cv-05852 (J. Torres) (S.D.N.Y. Nov. 23, 2013) (Docket No. 179) (judgment approving class action settlement and affirming the adequacy of Saxena White as Lead Counsel); *Schuler v. NIVS IntelliMedia Technology Group, Inc., et al.*, 1:11-cv-02484-KMW (S.D.N.Y. Mar. 31, 2015) (Tr. At 11) ("Saxena White's work has been outstanding."); *In re Braskem Sec. Litig.*, No. 15-cv-5132-PAE, (J. Engelmayer) (S.D.N.Y. Feb. 21, 2018) (Dkt. No. 133) (approving class action settlement and praising counsel's [Cohen Milstein's] "excellent lawyering. It's a pleasure … to get lawyering of this caliber."); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-cv-8093-LTS, (J. Swain) (S.D.N.Y. May 27, 2015) (Dkt. No. 289) ("this hard fought [including by Cohen Milstein] settlement which is very beneficial to the members of the classes, [is] impressive").

### 2.    Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at 614-15 (internal quotations and citations omitted). Certification of the Settlement Class for settlement serves these purposes.

### (a)    Common Legal and Factual Questions Predominate

Common issues will predominate where each member of a class is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct.  *See Marsh & McLennan*, 2009 WL 5178546, at *11.  This is clearly the case here.  As the U.S. Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625; *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *11.  Common issues also predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Here, because the Settlement Class members are subject to the same alleged misrepresentations and omissions, and because it is alleged that Defendants' misrepresentations were part of a common course of conduct, common questions predominate.  Lead Plaintiffs' claims

and the claims of the Settlement Class are also susceptible to common evidence and proof, as if Lead Plaintiffs and each Settlement Class member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1195-96 (2013); *see also Merrill Lynch*, 277 F.R.D. at 114. Rule 23(b)(3)'s predominance requirement is therefore satisfied.

### (b)  A Class Action is Superior to Other Methods of Adjudication

The class action device is the superior method for resolving the claims in this action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (stating that "[m]ost of the plaintiffs would have no realistic day in court if a class action were not available").

This class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of investors at issue here. *See Merrill Lynch*, 277 F.R.D. at 120. This is especially true because without the settlement class device Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the Stipulation. Moreover, certification of the class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

In light of the foregoing, all of the relevant factors weigh in favor of certifying the Settlement Class for purposes of the Settlement. Certification will not prejudice any interests the members of the Settlement Class may have in controlling individual actions, as requiring multiple actions would be costly and inefficient and could significantly reduce the prospects for recovery. *See Merrill Lynch*, 277 F.R.D. at 120.

### IV.  NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of proposed Preliminary Approval Order, and described above, Lead Plaintiffs will notify members of the Settlement Classes by mailing the Notice and Claim Form to all members of the Settlement Class who can be identified with reasonable effort, including through the cooperation of Credit Suisse.  The Notice will advise the members of the Settlement Class of (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.  The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.

In addition to mailing the Notice and Claim Form, Lead Plaintiffs will cause publication of a Summary Notice in *Investor's Business Daily* and over the *PR Newswire*.  Also, as set forth in the Class Action Fairness Act of 2005 ("CAFA"), Defendants will timely serve CAFA notices to appropriate federal and state officials within ten (10) days of the filing of the Stipulation.  *See also* Stip. Para. 47.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.  In short, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114 (citation omitted).  The manner of providing notice, which includes individual notice by mail to all members of the Settlement Class who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re*

*Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y.

Nov. 20, 2008).

## V.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs propose the following schedule:

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Notice and Claim Form to the Settlement Class (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(b)) | Up to 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(d)) | Up to 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶26) | 35 calendar days prior to Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order ¶¶13, 16) | 21 calendar days prior to Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order ¶5) | 100 calendar days after the filing of this Motion |
| Deadline for filing reply papers (Preliminary Approval Order ¶26) | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶10) | 120 calendar days after the Notice Date |

## VI.     CONCLUSION

Lead Plaintiffs respectfully request that the Court (i) certify the proposed Settlement Class

for the purposes of the Settlement; (ii) approve the proposed form and manner of notice given to

the Settlement Class; and (iii) schedule a hearing on Lead Plaintiffs' motion for final approval of

the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses.  The

Parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is

attached as Exhibit A to the Stipulation.

Dated:  July 10, 2020                          Respectfully submitted,

*/ s / Carol V. Gilden*                              */ s / Steven B. Singer*

Carol V. Gilden (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
(312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

*/ s / Daniel S. Sommers*
Daniel S. Sommers (pro hac vice)
Molly Bowen (pro hac vice pending)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500 East
Washington, DC 20005
(202) 408-4600
Fax: (202) 408-4699
dsommers@cohenmilstein.com
mbowen@cohenmilstein.com

Steven B. Singer (SS-5212)
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, New York 10606
(914) 437-8551
Fax: (888) 631-3611
ssinger@saxenawhite.com

Maya Saxena
Joseph E. White, III (JW-9598)
Lester R. Hooker
Adam D. Warden (pro hac vice)
SAXENA WHITE P.A.
7777 Glades Road
Suite 300
Boca Raton, FL 33434
(561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
awarden@saxenawhite.com

*Co-Lead Counsel for Lead Plaintiffs and for the Proposed Class*