UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, et al., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 17 Civ. 10014 (LGS) ) |
| CREDIT SUISSE GROUP AG, et al., | ) ) |
| Defendants. | ) ) ) |

**FINAL APPROVAL ORDER GRANTING IN PART APPLICATION
FOR ATTORNEYS' FEES AND COSTS, AND SERVICE AWARD**

On July 10, 2020, Plaintiffs moved for preliminary approval of a $15.5 million class action settlement. The Court granted preliminary approval on August 24, 2020, and notice of the settlement and fairness hearing was sent to class members. On December 10, 2020, the Court held a fairness hearing. No objections to the settlement were filed, and no objectors appeared at the hearing. By separate order, the Court approved the settlement agreement and plan of allocation as fair and adequate under Federal Rule of Civil Procedure 23(e).

Plaintiffs move for fees and costs to be paid out of the $15.5 million settlement fund pursuant to Federal Rule of Civil Procedure 23(h). The requested attorneys' fees are 30% of the fund or $4,650,000. Plaintiffs also move for costs of $367,083.75 in litigation expenses incurred by counsel, and $21,319.00 in time and expenses incurred by the named Plaintiffs: the City of Birmingham Retirement and Relief System ("Birmingham"), Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds ("Local 60"), Teamsters Local 456 Pension and Annuity Funds ("Local 456") and International Brotherhood of Teamsters Local No. 710 Pension Plan ("Local 710") (collectively, "Lead Plaintiffs"). The motion is granted in part.

1

Lead Counsel are awarded 26% of the fund in attorneys' fees, or $4,030,000.00, as well as $367,083.75 in costs. Birmingham, Local 60, Local 456 and Local 710 are awarded $1,868.75, $3,177.25, $3,648.00 and $11,285.00, respectively.

## I.     BACKGROUND

Plaintiffs filed their Complaint in 2016, alleging violations of the Securities Exchange Act of 1934 related to Defendant Credit Suisse Group AG's management of American Depositary Receipts. The case was litigated for more than two years before settlement was negotiated. The class was represented by Saxena White P.A. and Cohen Milstein Sellers & Toll (collectively, "Lead Counsel"). Lead Counsel's work on the litigation included: (1) investigating and filing the Complaint; (2) opposing a motion to dismiss; (3) conducting fact discovery; (4) preparing for class certification and (5) negotiating and briefing the settlement. Lead Counsel worked a total of 11,650 billable hours on this matter. If attorneys' fees were calculated on an hourly basis at current rates, the total fee or "lodestar" would be $5,753,267. A fee award of 30% of the fund or $4,650,000 would represent a multiplier of 0.81 of the lodestar.

## II.    LEGAL STANDARD

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *accord Beacon Assocs. LLC I v. Beacon Assocs. Mgmt. Corp.*, No. 14 Civ. 2294, 2020 WL 2213477, at *7 (S.D.N.Y. May 7, 2020). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . and will not be overturned absent an abuse of discretion . . . ." *Goldberger*, 209 F.3d at 47; *accord Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). The reasonableness of a fee in this Circuit is evaluated considering the *Goldberger* factors: "(1) the time and labor expended by counsel; (2)

2

the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (omission in original).

District courts in this Circuit may use one of two methods as a starting point to analyze attorneys' fees. *Id.* The first is the "lodestar" method, by which the district court multiplies the reasonable hours billed by a reasonable hourly rate. *See id.* at 47. Once that computation is made, the district court may adjust the multiplier based on other factors such as the risk of the litigation or the performance of the attorneys. *See id.* The second method is the "percentage of the fund" method, which is the trend in this Circuit. *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir.2005); *accord Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19 Civ. 8216, 2020 WL 5894603, at *5 (S.D.N.Y. Oct. 5, 2020). Under the percentage method, the fee must be a reasonable percentage of the total value of the settlement fund created for the class. *See Goldberger*, 209 F.3d at 47. The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal–Mart*, 396 F.3d at 121. By contrast, the lodestar method creates "a disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of the line-item fee audits." *Id.* at 121 (internal quotation marks, citations and alterations omitted); *accord In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728, 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020). The percentage method is used to evaluate the attorneys' fees in this case, with use of the lodestar method as a cross-check to verify the reasonableness of the awarded percentage. *See Wal–Mart Stores, Inc.*, 396 F.3d at 123; *accord Signet Jewelers*, 2020 WL 4196568, at *15.

### III. DISCUSSION

#### A. Attorneys' Fees

The first step in the attorneys' fees analysis is to determine a baseline reasonable fee with reference to other common fund settlements of a similar size and complexity, based on the subject matter of the claims.  This analysis considers three of the *Goldberger* factors: (1) the requested fee in relation to the settlement, (2) whether to award a lower percentage of a higher settlement amount under a "sliding scale" approach in order to avoid a windfall to Lead Counsel and (3) the magnitude and complexity of the case.  *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).  The second step is to consider the *Goldberger* factors of risk, the quality of the representation and other public policy concerns to make any necessary adjustments to the baseline fee.  The final step is to apply the lodestar method as a cross-check, which addresses the final *Goldberger* factor -- the time and labor expended by counsel.  Based on this analysis, a reasonable fee in this case is 26% of the $15,500,000 settlement fund, or $4,030,000.

##### 1. Comparison to Court–Approved Fees in Other Common Fund Settlements

Historical data of fees awarded in common fund cases provides an unbiased and useful reference for comparing fees in cases of similar type or with similar recovery amounts.  A 2010 empirical study by Professors Eisenberg and Miller examined attorneys' fees awards from nearly 700 common fund settlements between 1993 and 2008.  *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 263–64 (2010) ("Eisenberg & Miller 2010").  Eisenberg and Miller performed a follow-on study in 2017, examining data from 458 common fund settlements between 2009 and 2013.  Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L.

Rev. 937, 940 (2017) ("Eisenberg & Miller 2017").  Those studies classify the examined settlements by recovery amount and type of litigation.  From 1993 to 2008, in cases with recoveries in the $14.3 million to $22.8 million range, the mean attorneys' fees as a percentage of the settlement fund were 22.7, with a median of 23.5.  Eisenberg & Miller 2010 at 265, Table 7.  From 2009 to 2013, in cases with recoveries in the $12 million to $23.4 million range, attorneys' fees averaged between 25% and 26% of the settlement fund.  Eisenberg & Miller 2017 at 948, Fig. 5.

Similar attorneys' fees percentages are found in empirical data for securities actions, of which this is one.  From 1993 to 2008, attorneys' fees in securities actions averaged 23% of the settlement fund, with a median of 25%.  Eisenberg & Miller 2010 at 262, Table 5.  From 2009 to 2013, attorneys' fees in securities actions averaged 23% of the settlement fund, with a median of 25%.  Eisenberg & Miller 2017 at 952, Table 4.

Other empirical sources contain similar data.  A 2019 survey of securities class action settlements by NERA Economic Consulting states that from 2010 to 2019, median fees for settlements between $10 and $25 million were 25%.  *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* 25 (NERA Jan. 21, 2020) ("NERA 2019"); *see also* Stefan Boettrich and Svetlana Starykh*, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* 41 (NERA Jan. 29, 2019) ("NERA 2018") (from 2014 to 2018, median fees in same range were 25%); Stefan Boettrich and Svetlana Starykh*, Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* 42 (NERA Jan. 29, 2018) ("NERA 2017") (from 2012 to 2017, median fees in same range were 25%).

Fees in cases with similarly-sized settlement funds are typically lower than the 30% Lead Counsel request.  Fees in securities actions are also generally lower than Lead Counsel's request.

5

The next question is whether a "sliding scale" approach -- awarding a smaller percentage for fees as the size of the settlement fund increases -- is appropriate and avoids a windfall to plaintiffs' counsel to the detriment of class members.  *See Wal–Mart* at 122–23 ("Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable."); *accord In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ 2613, 2020 WL 6891417, at *3 (S.D.N.Y. Nov. 24, 2020).  In support of their request for a 30% fee, Lead Counsel note various cases in the Second Circuit awarding fees in their requested range.  The Court declines to award the 30% requested by Lead Counsel on the basis of these cases, and instead finds that a lower recovery percentage is appropriate in light of the size of the settlement and the fact that the Court must act as a fiduciary "serv[ing] as a guardian of the rights of absent class members," *id*.

The next question is whether the magnitude and complexity of this case warrants a departure from the lower range typically seen in similar cases.  As to complexity, Lead Counsel do not provide, nor does the Court discern, any reason why litigating this case was inherently more complex than other types of securities class litigation.  As to magnitude, this case was litigated through discovery, a motion to dismiss and two settlement discussions.  The magnitude and complexity of this case are consistent with other securities class action, and do not favor recovery above the baseline set by similar cases.

### 2. Consideration of Risk, Result and Policy Considerations

The next step is to consider three additional *Goldberger* factors -- the risk of the litigation, the quality of the representation and any remaining public policy considerations -- and determine whether this case is so exceptional in any of those areas that a departure from awards in similar cases is warranted.

### i. The Risk of Litigation

Risk should be considered "as of when the case is filed," *Goldberger*, 209 F.3d at 55, and greater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage, *Signet Jewelers*, 2020 WL 4196468, at *19.  This case presented complex factual issues related to Credit Suisse's risk limits and controls, but did not involve significant unsettled questions of law or complicated legal issues.  Had this case proceeded to trial, unresolved factual and legal issues may have barred any recovery by Lead Counsel.  A demonstrable risk of loss is inherent to any case that proceeds to trial, and such risk does not justify increasing the recovery percentage in this case.

### ii. The Quality of Representation

Lead Counsel credibly represent that they, along with opposing counsel, have experience in litigating securities class actions.  The settlement in this case supports that representation. *Goldberger*, 209 F.3d at 55 ("the quality of representation is best measured by results").  The settlement is the product of more than two years of litigation and negotiation, and appears to be a fair reflection of the strength of each constituency's case.  Class members, none of whom objected to the settlement, will receive approximately 23.7% to 63.4% of the maximum that they could have received, which assumes that they would have prevailed on various disputed legal and factual issues, including class certification.  This recovery percentage is higher than the ratio of recovery to investor losses estimated by NERA in 2017, 2018 and 2019.  *See* NERA 2019 at 20 Fig. 13 (settlements recover 2.1% of estimated losses); NERA 2018 at 36 Fig. 28 (2.6%); NERA 2017 at 38 Fig. 29 (2.6%).  In light of this empirical data, the settlement benefits the class more than is typical, and warrants an increase in Lead Counsel's recovery percentage.

### iii. Public Policy Considerations

Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of "serv[ing] as an inducement for lawyers to make similar efforts in the future." *Wal–Mart*, 396 F.3d at 96. However, no special public policy concern differentiates this case from other securities cases. This factor does not warrant an increase in Lead Counsel's recovery percentage.

### 3. The Lodestar Cross-Check

The lodestar method assesses the value of attorney hours at a reasonable billing rate, as requird by the last *Goldberger* factor. The lodestar cross-check ensures the reasonableness of a fee awarded under the percentage-of-the-fund method. *See Signet Jewelers*, 2020 WL 4196468, at *16 (citing *Goldberger*, 209 F.3d at 50). The requested fee in this case results in a lodestar multiplier of .81. Lodestar multipliers in cases with similar settlement amounts averaged 1.68 with a standard deviation of .85 from 1993 to 2008, *see* Eisenberg & Miller 2010 at 274, Table 15, and averaged 1.86 with a standard deviation of 1.58 from 2009 to 2013, *see* Eisenberg & Miller 2017 at 967, Table 13. Securities class actions from 2009 to 2013 averaged a lodestar multiplier of 1.79. *See id.* at 965, Table 12.B. Lead Counsel attributes the low lodestar multiplier to extensive document discovery, noting that Defendants produced approximately 1.5 million documents. Although such a large number of documents requires a nontrivial expenditure of attorney hours, Lead Counsel offer no explanation for why the magnitude of discovery in this case exceeds similar actions. Accordingly, the lodestar cross-check justifies only a modest upward adjustment in the fee percentage.

In light of the above factors, a reasonable recovery percentage in this case is 26% of the settlement fund, or $4,030,000.

### B. Costs

Lead Counsel seek reimbursement for $367,083.75 in litigation costs for: expert witnesses, filings, postage, mediations, factual investigation and legal research, travel and conference logistics. Courts routinely award such costs, which are necessarily incurred in litigation and regularly charged to clients. *See Signet Jewelers*, 2020 WL 4196468, at *16 ("in a class action, attorneys should be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation" (internal quotation marks omitted)); Fed. R. Civ. P. 23(h); *see also Wal–Mart*, 396 F.3d 96, 121 (2d Cir. 2005) (affirming award of routine litigation costs and expenses). Lead Counsel's motion for costs is accordingly granted.

### C. Service Award to Lead Plaintiffs

The Private Securities Litigation Reform Act ("PSLRA") permits the "award of reasonable costs and expenses" to a lead plaintiff "directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Signet Jewelers*, 2020 WL 4196468, at *22–23 (internal quotation marks omitted). Activities by lead plaintiffs justifying such an award include "reviewing pleadings and briefs, assisting with discovery responses, collecting documents for production, and evaluating and approving the settlement." *Christine Asia Co. v. Yun Ma*, No. 115 Md 2631, 2019 WL 5257534, at *20 (S.D.N.Y. Oct. 16, 2019).

Birmingham, Local 60, Local 456 and Local 710 request reimbursement for employee time spent participating in this action in the amounts of $1,868.75, $3,177.25, $3,648.00 and

$12,625.00, respectively.  Lead Plaintiffs engaged in activities commonly expected of class representatives:  they consulted with Lead Counsel, reviewed pleadings and other filings, produced responsive documents and information in discovery and supervised and participated in the settlement process.  Mindful that a "balance must be struck so that a class representative does not view [its] prospect for rewards as materially different from other members of the class, yet is not disadvantaged by [its] service in pursuing worthy claims," *Lacovara v. Hard Rock Cafe Int'l (USA), Inc.*, No. 10 Civ. 7821, 2012 WL 603996, at *1 (S.D.N.Y. Feb. 24, 2012), the Court finds awards of $1,868.75, $3,177.25 and $3,648.00 appropriate for Birmingham, Local 60 and Local 456, respectively.

Local 710's requested reimbursement includes 8 hours of time by an assistant administrator at a rate of $200 per hour.  This hourly rate is higher than those of employees at the other Lead Plaintiffs, which are $115, $71 and $91.20.  The Court finds a comparable rate of $100 per hour reasonable for the 8 hours expended by Local 710's assistant administrator in this action.  Local 710 also requests reimbursement for $11,025.00 in fees from an outside attorney for his efforts in advising Local 710 in this action:  advising on the complaint, assisting with discovery requests, conferring with Lead Counsel and preparing for, traveling to and participating in settlement negotiations and mediation sessions.  Upon review of that attorney's billing records, the Court finds reimbursement to Local 710 for his services proper.  Local 710 is awarded $11,825.00.

## IV. CONCLUSION

Lead Counsel is hereby awarded attorneys' fees of $4,030,000.00, to be paid from the settlement fund.  Three quarters of that amount, or $3,022,500.00, shall be payable immediately, and the remaining $1,007,500.00 shall be payable after all distributions to class members from

the settlement fund are complete. Lead Counsel is awarded reimbursement of expenses in the sum of $367,083.75, to be paid from the settlement fund immediately. Birmingham is awarded $1,868.75, Local 60 is awarded $3,177.25, Local 456 is awarded $3,648.00 and Local 710 is awarded $11,285.00, all payable after all distributions to class members from the settlement fund are complete.

Dated: December 17, 2020
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**